**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Big Stone Gap Division**

| | | |
|---|---|---|
| **MELINDA SCOTT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 2:18cv00012** |
| | ) | |
| **VIRGINIA DEPARTMENT OF** | ) | |
| **MEDICAL ASSISTANCE** | ) | |
| **SERVICES,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

The Virginia Department of Medical Assistance Services ("DMAS" or "Department"), by counsel, and pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, submits the following Memorandum in Support of its Motion to Dismiss the Complaint in this matter.

## I.    PRELIMINARY STATEMENT

Plaintiff, Melinda Scott, filed a Complaint against DMAS[1] purporting to assert a claim under 42 U.S.C. § 1983[2] for violation of the constitutional First Amendment rights of the Plaintiff and her family.  This Court lacks subject matter jurisdiction, because DMAS, an agency of the Commonwealth of Virginia ("Commonwealth"), is entitled to immunity under the Eleventh Amendment.  Additionally, Plaintiff lacks standing to bring the instant action.  Furthermore, the Complaint fails to state a claim against DMAS upon which relief can be granted.[3]

---

[1] The Complaint states that jurisdiction is based on naming a Government defendant.  (Compl. ¶ 3).  This is incorrect.  To clarify, DMAS is a state agency, not a federal agency.  The Complaint also appears to assert Federal Question jurisdiction based on First Amendment claims.  (Compl. ¶ 4).

[2] While the Complaint itself does not expressly reference the statute, the Defendant acknowledges that the statute is referenced in the cause of action section of the Court's Civil Cover Sheet.

[3] In filing this Motion to Dismiss, Defendant does not waive any potential affirmative defenses to be filed in a responsive pleading, should the Court decline to grant this Motion.  This includes but is not limited to a statute of limitations argument.  No federal statute of limitations applies in §1983 actions, and such actions are governed by

## II.    BACKGROUND

### A.  The Parties

The Defendant, DMAS, is the agency of the Commonwealth responsible for administering the federally and state funded Virginia Medicaid Program.  Va. Code §32.1-325 *et seq*.  The Medicaid program provides medical assistance services to the eligible and medically needy citizens of the Commonwealth of Virginia.  Title XIX of the Social Security Act, known as the "Medicaid Act," requires States to promulgate a medical assistance plan ("State Plan") setting forth State regulations governing the State's Medicaid program.  42 U.S.C. § 1396a.  In administering the State Plan, the Department is authorized to issue rules, regulations, and policies on program matters.  42 C.F.R. § 431.10(e); Va. Code § 32.1-325(A).

The Plaintiff, Melinda Scott, is the mother of a minor child enrolled in a Virginia Medicaid Waiver program known as the Elderly or Disabled with Consumer Direction ("EDCD") Waiver.

### B.  Factual Allegations[4]

Plaintiff's son was enrolled in the Virginia Medicaid EDCD Waiver in April 2016.  Complaint ("Compl.") ¶ 6(a).  Personal care services (sometimes referred to as attendant care services) are available to eligible recipients enrolled in the EDCD Waiver.  12VAC-30-120-766.[5]  Such services are provided in the recipient's home through an agency-directed or consumer-directed model.  12VAC30-120-776(A).  Plaintiff's son receives personal care services through the consumer-directed model, which allows a family member or caregiver to serve as the employer of record for a Medicaid recipient under age the age of 18 and to hire a caregiver

---

the state statute of limitations applicable for general personal injury cases.  *Riddick v. Dep't. of Corr.*, No. 7:17-cv-268, 2017 U.S. Dist. LEXIS 211696 (W.D. Va. Dec. 26, 2017).
[4] Defendant does not admit the accuracy, completeness, and/or sequence of Plaintiff's alleged facts in the Complaint filed in this case.
[5] On a Rule 12(b)(6) motion to dismiss, a court is not precluded in its review of the complaint from taking judicial notice of items in the public record.  *See Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986); *Gasner v. City of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995).

(known as an attendant or CD employee).    Compl.    ¶¶ 6(a),(b);  12VAC30-120-766(B)(3);
12VAC30-120-770(A)(2).    Individuals selecting the consumer-directed model must receive
support from a services facilitator.  12VAC30-120-770(A)(5).

In February 2018, Plaintiff attempted to enroll her spouse as an attendant for her son.
Compl. ¶ 6(b).  Enrollment is processed electronically by DMAS' agent, Public Partnerships
("PPL").  Compl. ¶¶ 6(b),(c).  The Department's agent, PPL, processed enrollment for Plaintiff's
spouse to be an attendant, effective March 5, 2018.  Compl. ¶ 6(c).  Plaintiff was notified by her
service facilitator that, per DMAS policy,[6] step-parents cannot be paid for attendant care
services.  Compl. ¶ 6(b).  While not fully quoted in the Complaint, the Department's EDCD
Waiver Manual is publicly available.  The EDCD Waiver Manual states, in relevant part:

> Consumer-Directed (CD) Personal Care Attendant Requirements
> ***
> A personal care attendant cannot be the parent (biological, step parent, adoptive,
> legal guardian) of the minor child or spouse of the individual receiving waiver
> services.  Payment may be made for services rendered by *other* family members
> or caregivers living under the same roof as the individual receiving waiver
> services only when there is written, objective documentation as to why no other
> attendant is available to provide services for the individual.  The family member
> or caregiver providing personal care services must meet the same requirements as
> other personal care attendants.  In addition, anyone who has legal guardianship for
> the individual shall also be prohibited from being a personal care attendant under
> this program.  (emphasis added).

EDCD Waiver Manual, Ch. II, pp. 31-32 (Revised 6/16/2017).

Plaintiff wrote to DMAS in February 2018 requesting an exception to the policy
prohibiting parents and step-parents from serving as attendants.  Compl. ¶ 6(e).  Plaintiff's letter
requested an exception to enroll her spouse as a second attendant for her son, acknowledging that
her son was receiving services under the EDCD Waiver and already had one attendant.  Compl. ¶

---

[6] The Complaint appears to use "policy" and "administrative code" interchangeably.  Compl. ¶¶ 6(b),(f).  The
Department's regulations appear in the Virginia Administrative Code.  The Complaint does not cite specific
regulations.  The Department also has various policy manuals, such as the EDCD Waiver manual cited by Plaintiff.

6(e); Letter (2/16/18) attached to Complaint p.6 of 9 (Page ID# 33). Plaintiff's letter stated the basis for her request was due to the religious beliefs of her family that permit only a male relative to provide bathing assistance to her son. Compl. ¶¶ 6(e), (g); Letter (2/16/18) attached to Complaint p.6 of 9 (Page ID# 33). DMAS notified Plaintiff by phone, and subsequently by email, that her son's step-parent could not be enrolled as an attendant to be reimbursed by Medicaid funds. Compl. ¶ 6(e).

### III.    LEGAL STANDARD

**A.    Rule 12(b)(1)**

"Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss an action for lack of subject matter jurisdiction." *Allen v. College of William & Mary*, 245 F. Supp. 2d 777, 782 (E.D. Va. 2003). The burden rests with the plaintiff to establish jurisdiction is proper. *Allen*, 245 F. Supp. 2d at 782; *Blankenship v. Am. Fed. Gov't Emples.*, No. 3:15-cv-294, 2016, U.S. Dist. LEXIS 42851, at *2 (E.D. Va. 2016). "For motions made pursuant to Federal Rule of Civil Procedure 12(b)(1), the evidentiary standard depends upon whether the challenge is a facial attack on the sufficiency of the pleadings, or an attack on the factual allegations that support jurisdiction." *Allen*, 245 F. Supp. 2d at 782-83 (internal quotation omitted). Specifically, "[i]f the defendant is attacking the sufficiency of the complaint, the court must accept all of the complaint's factual allegations as true." *Id.* at 783 (internal citations omitted). By contrast, "if the defendant claims that the jurisdictional facts alleged in the complaint are untrue, the pleadings are regarded as mere evidence. … The court then weighs the pleadings and all of the other evidence to determine whether subject matter jurisdiction exists." *Id.* at 783 (internal citations omitted).

**B.        Rule 12(b)(6)**

Pursuant to Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion tests the legal sufficiency of a complaint.  *Allen*, 245 F. Supp. 2d at 783; *Edwards v. City of Goldsboro*, 178 F. 3d 231, 243 (4th Cir. 1999).  A Plaintiff must allege facts sufficient to state all the elements of her claim.  *Bass v. E.I. DuPont de Nemours & Co*., 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp*., 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

A complaint that fails to state a claim upon which relief may be granted as required by Fed. R. Civ. P. 12(b)(6) fails the plausibility test set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), which requires that the complaint must state on its face a "plausible" claim against the defendants.  A plaintiff is required to state facts sufficient to "raise a right to relief above the speculative level," alleging a claim that is "plausible on its face" rather than merely "conceivable."  *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974; *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 56 U.S. at 678, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 546, 127 S. Ct. at 1964).  The plaintiff must "provide the 'grounds' of his 'entitlement to relief'" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal citation omitted).

When ruling on a Rule 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations, but this principle does not apply to unsupported legal conclusions.  *United Mine*

*Workers, Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979). A court will accept neither "legal conclusions drawn from the facts" nor "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). While a court liberally construes a *pro se* litigant's pleadings to avoid inequity; a court is not the *pro se* litigant's advocate. *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978). Further, "[t]he requirement of liberal construction 'does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court.'" *Worthington v. Palmer*, No. 3:15-cv-410, 2015 U.S. Dist. LEXIS 159441, at *9 (E.D. Va. 2015).

## IV.    ARGUMENT

The Complaint purports to allege First Amendment claims brought under 42 U.S.C. § 1983. Plaintiff challenges the Department's EDCD Waiver policy and related, uncited administrative code provisions (collectively, "EDCD Waiver policy" or "policy") prohibiting parents and step-parents from serving as in-home care attendants eligible to receive reimbursement from DMAS, arguing the EDCD Waiver policy is unconstitutional as applied to her family because it restricts the free exercise of her family's religious beliefs, and that the policy "establishes other religious standards as the standard for Virginia families." Compl. ¶¶ 6(e), (f), (g).

### A.  This Court lacks subject matter jurisdiction.

The Eleventh Amendment provides, "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state or by citizens or subjects of any foreign state." U.S. Const. amend. XI. It is well-settled that the Eleventh Amendment precludes lawsuits in federal

courts against states. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Edelman v. Jordan,* 415 U.S. 651, 663 (1974) ("[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.").

Sovereign immunity is not limited to states as such, but also applies to an agency that acts as an arm of the state. *Kincaid v. Anderson*, No. 1:14-cv-27, 2015 U.S. Dist. LEXIS 73510, at *6 (W.D. Va. 2015) (internal quotations and citations omitted). This immunity also extends to state officials who are sued for damages in their official capacity, because such actions merely constitute suits against the state. *Patterson v. Hawse*, No. 1:15-cv-477, 2015 U.S. Dist. LEXIS 87966, at *4 (E.D. Va. 2015); *Martin v. Wood*, 772 F.3d 192, 195 (4th Cir. 2014) (holding that sovereign immunity extends to state officers acting in their official capacity).

The Supreme Court recognized a limited exception to Eleventh Amendment immunity in *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). The Court found that state officials may be sued in federal court for injunctive relief; however, this exception to Eleventh Amendment immunity permits only prospective, not retrospective, relief. *Id.; Antrican v. Odom*, 290 F.3d 178, 186 (4th Cir. 2002). The Supreme Court clarified after *Young* that "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 677, 94 S. Ct. 1347, 1362 (1974).

In matters seeking prospective injunctive relief, the Fourth Circuit has applied the *Ex Parte Young* exception to State officials and denied Eleventh Amendment Immunity in various contexts. *See Antrican v. Odom*, 290 F.3d 178 (4th Cir. 2002) (denying Eleventh Amendment immunity to State officials in a challenge by North Carolina Medicaid beneficiaries concerning

the North Carolina Medicaid program's compliance with specified provisions of the federal Medicaid Act.); *Rehab. Ass'n. v. Kozlowski*, 42 F.3d. 1444, 1449 (4th Cir. 1994). The instant case filed against DMAS does not implicate the *Ex Parte Young* exception. As an agency of the Commonwealth, DMAS is an arm of the State and entitled to Eleventh Amendment immunity. The Commonwealth of Virginia has not consented to Plaintiff's suit in federal court, and thus, the Eleventh Amendment bars this action against DMAS. Accordingly, the Court must dismiss the Complaint with prejudice.

## B.  Plaintiff lacks standing.

As an initial matter, Plaintiff lacks standing to pursue the claims she asserts against DMAS. Plaintiff is the mother of a minor child enrolled in the Virginia Medicaid EDCD Waiver program. Compl. ¶ 6(a). Plaintiff filed the instant suit in her own name, not as next friend to her minor child or in a representative capacity under Rule 17. Plaintiff purports to assert First Amendment claims on her behalf as well as on behalf of her son and spouse. Compl. ¶¶ 6(b), (e), (f), (g).

The party invoking federal jurisdiction bears the burden of establishing the elements of standing. *Barrett v. Minor*, No. 1:15-cv-32, 2015 U.S. Dist. LEXIS 115087 at *10 (W.D. Va. 2015) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). "The irreducible constitutional minimum of standing requires 1) an injury in fact – a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical; 2) causation – a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant; and 3) redressability – a likelihood that the requested relief will redress the alleged injury." *Id.* (citing *McBurney v. Cuccinelli*, 616 F.3d 393, 402 (4th Cir. 2010)) (internal quotations omitted).

Plaintiff has failed to allege sufficient facts establishing a concrete and actual or imminent harm she suffered as a result of DMAS' actions. Plaintiff asserts that the EDCD Waiver policy discriminates against Plaintiff's religion and does not allow Plaintiff to "benefit from the program equally." Compl. ¶ 6(g). As detailed further herein, Plaintiff (i) does not allege sufficient facts to establish a First Amendment claim against DMAS, and (ii) does not allege facts supporting the proposition that Plaintiff is entitled to any benefit under the EDCD Waiver program. Plaintiff's general allegations of religious discrimination fall short of identifying a concrete and actual injury to Plaintiff. To the extent any injury is identified, however, the facts alleged by Plaintiff fail to establish a fairly traceable connection between the injury and the EDCD Waiver policy.

As noted above, Plaintiff also purports to allege First Amendment violations on behalf of her son and her spouse. Compl. ¶¶ 6(e), (f), (g). In the event the Court finds the Plaintiff has standing, it must be limited to Plaintiff's litigation of her own claims *pro se*. Plaintiff cites no authority allowing her to represent the interests of her child[7] or her spouse in a court of law. It is a "general common-law rule that non-attorneys cannot litigate the interests of another person or of artificial person." *Willoughby v. Oakmeade Assocs., L.P.*, 3:15-cv-650, 2016 U.S. Dist. LEXIS 103711 at *3, n.1 (E.D. Va. 2016) (citing *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 560 U.S. 516, 536 n.1, 127 S. Ct. 1994, 167 L. Ed. 904 (2007); *Brown v. Ortho Diagnostic Sys., Inc.*, 868 F. Supp. 168, 170 (E.D. Va. 1994)). "The right to litigate for *oneself*, however, does not create a coordinate right to litigate for *others*." *Myers v. Loudoun County Public Schools, et al.*, 418 F.3d 395, 400 (4th Cir. 2005) (emphasis in original).

---

[7] Even assuming Plaintiff can act as her minor child's representative in an administrative proceeding before DMAS, Plaintiff does not have authority to litigate on her child's behalf in court. The ability of a non-attorney representative to represent a party before an agency does not confer authorization for that non-attorney representative to litigate before a court of law. *See Myers v. Loudoun County Public Schools, et al.*, 418 F.3d 395, 399-401 (4th Cir. 2005).

In *Brown*, the court explained that "[t]he near uniform proscription on non-lawyers representing others in court" is based on the compelling state interest in regulating the practice of law, and what is at stake for the litigant, including the finality of the adjudication of rights in question. *Brown*, 868 F. Supp at 171-72. Accordingly, Plaintiff cannot litigate on behalf of her minor child[8] or her spouse in court. See, *Barrett v. Minor*, No. 1:15-cv-32, 2015 U.S. Dist. LEXIS 115087 at *4 n.4 (W.D. Va. 2015); Harwley v. Berryhill, No. 6:16-cv-32, 2017 U.S. Dist. LEXIS 157585 at *2 n.3 (W.D. Va. 2017) (citing *Brown v. Ortho Diagnostic Sys., Inc.*, 868 F. Supp. 168, 170 (E.D. Va. 1994)).

## C. The Complaint fails to state a claim against DMAS.

Even if DMAS did not enjoy Eleventh Amendment immunity as an agency of the Commonwealth, the Complaint fails to allege facts sufficient to state a claim against DMAS. Although factual allegations must be taken as true, legal conclusions asserted in the Complaint are not entitled to the same deference. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949. In the instant case, the Plaintiff makes generalized allegations that DMAS violated her First Amendment rights and the rights of her family, but fails to allege sufficient facts to support these claims.

---

[8] Some courts have carved out a narrow exception to the longstanding principle that non-attorney parents may not litigate the claims of their minor child in court *pro se*. The exception recognized by these courts is limited to the context of parents representing their minor children *pro se* in appeals from the denial of supplemental security income ("SSI") benefits. *Lee v. Comm'r of the SSA*, 639 Fed. Appx. 951 (p*er curiam*, see footnote) (4th Cir. 2016); *Machadio v. Apfel*, 276 F.3d 103 (2nd Cir. 2002); *Harris v. Apfel*, 209 F.3d 413 (5th Cir. 2000). The reasoning of the courts in such cases is tied to the fact that the interests of the parent and minor child are closely intertwined under the specific SSI regulations. *Id.* The courts reviewed the specific circumstances to determine whether the non-attorney parent had a sufficient interest in the case and met basic standards of competence. The Second Circuit was careful to note that this is not a sweeping exception, and there will be cases where the issues are sufficiently significant or complex so that a non-attorney parent will not be able to proceed without compromising the rights of his or her child. *Machadio*, 276 F.3d at 108. With the exception of SSI benefits appeals, courts have been reluctant to disturb the longstanding principle that non-attorney parents may not litigate the claims of their minor children in judicial proceedings, as no party may sue by deputy. *Myers v. Loudoun Cnty. Pub. Schs.*, 418 F.3d 2005 (4th Cir. 2005) (citations omitted). Plaintiff alleges no facts that would tend to support the proposition than an exception should be made in this case.

1. <u>The Complaint Fails to State a Claim Under 42 U.S.C. § 1983</u>.

To state a claim for violation of civil rights under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived her of a right secured by the constitution or laws of the United States and that such deprivation proximately caused the plaintiff's damages. See *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). Stated differently, 42 U.S.C. § 1983 creates a right of action against any person acting under color of state law to deprive another person of a right secured by the Constitution or by statute.

This case requires the court to determine whether Plaintiff, the mother of a minor child enrolled in the Virginia Medicaid program, may bring a First Amendment action against DMAS under 42 U.S.C. § 1983 to challenge DMAS' EDCD Waiver policy.  Plaintiff appears to assert that DMAS, through its EDCD Waiver policy, is depriving her and her family of the constitutional right to freely exercise their religion.  Unlike local governing bodies that can be sued directly under 42 U.S.C. § 1983 for monetary, declaratory, or injunctive relief, it is well settled that a State is not a "person" within the meaning of § 1983 and therefore cannot be sued under the statute.  *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989); *Melinda Scott v. Wise County Dept. of Social Services, et al.*, 2:17-cv-6, 2017 U.S. Dist. LEXIS 128448 (W.D. Va. 2017).  Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek such a remedy against a State unless the State has waived its immunity.  *Will*, 491 U.S. at 65-66, 109 S. Ct. at 2309.

Although the Supreme Court of the United States and the Fourth Circuit have held certain individual provisions of the Medicaid Act, 42 U.S.C. § 1396 *et seq*., give rise to a right enforceable by Medicaid providers through actions under 42 U.S.C. § 1983, such decisions

involved actions filed against State officials, not a State agency.  *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 110 S. Ct. 2510, 110 L. Ed. 2d 455 (1990); *Doe v. Kidd*, 501 F.3d 348 (4th Cir. 2007). In both cases, the courts engaged in a detailed analysis of the provisions of the Medicaid Act at issue to determine if the specific provisions created a private right enforceable under § 1983.  In this case, Plaintiff has not invoked any provision of the Medicaid Act.  Additionally, Plaintiff's action was filed against DMAS, an agency of the Commonwealth.  Accordingly, Plaintiff's § 1983 claim against DMAS fails, the requested injunctive relief and retroactive monetary relief (back pay) cannot be awarded, and the Complaint must be dismissed.

2.  <u>The Complaint Fails to State a Claim for Violation of the First Amendment.</u>

The Complaint fails to state the statutory vehicle under which Plaintiff lawfully can assert a First Amendment claim against DMAS.  Plaintiff presents no allegations invoking any provision of the Medicaid Act, nor can Plaintiff's conclusory statements reasonably be construed as bringing claim under one or more provisions of the Medicaid Act. Assuming Plaintiff, by some other means,[9] can bring a First Amendment Free Exercise and/or Establishment Clause claim against DMAS, the Complaint lacks sufficient facts to support its conclusory allegations.

<u>Not All Burdens on Religion are Unconstitutional</u>

The First Amendment states, in relevant part, that "Congress shall make no laws respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const.

---

[9] The EDCD Waiver policy challenged by Plaintiff is found in a state regulation and a state policy manual, not in federal law or federal regulations.  Accordingly, the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb *et seq*., is inapplicable and cannot be relied upon by Plaintiff as authority for her claims. See *City of Boerne v. Flores*, 521 U.S. 507, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997); *Carmichael v. Sebelius*, No. 3:13-cv-129, 2013 U.S. Dist. LEXIS 152410 at *17-18 (E.D. Va. 2013); *Hunt Valley Baptist Church, Inc. v. Baltimore City*, No. ELH-17-804, 2017 U.S. Dist. LEXIS 171539 at *54-59 (Dist. MD 2017); *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2760-2763, 189 L. Ed. 2d 675, 687-689 (2014).

Finally, there is no indication Plaintiff is an institutionalized/incarcerated individual, and the First Amendment allegations in the Complaint are against DMAS, not against a state institution, and do not involve land use regulations.  As such, the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc *et seq*., also does not apply and cannot be relied upon by Plaintiff as authority for her claims.  *Id.*

amend. I.  To the extent the Department's EDCD Waiver policy has any incidental impact on religion, the Supreme Court has held that not all burdens on religion are unconstitutional.  *Bowen v. Roy*, 476 U.S. 693, 702, 106 S. Ct. 2147, 2153, 90 L. Ed. 2d 735, 746 (1986).  On this point, the Supreme Court has stated,

> To maintain an organized society that guarantees religious freedom to a great variety of faiths requires that some religious practices yield to the common good. Religious beliefs can be accommodated, but there is a point at which accommodation would radically restrict the operating latitude of the legislature.

*U.S. v. Lee*, 455 U.S. 252, 259, 102 S. Ct. 1051, 1056, 71 L. Ed. 2d 127, 133-34 (1982).  In *Bowen*, the Supreme Court reviewed the constitutionality of the federal statute requiring participants in federal public benefit programs to furnish their Social Security numbers to their state welfare agencies as a condition of receiving benefits and that the state agencies use the Social Security numbers in the administration of the state benefit plan.  The Court determined that the "statutory requirement that applicants provide a Social Security number is wholly neutral in religious terms and uniformly applicable.  There is no claim that there is any attempt by Congress to discriminate invidiously or any covert suppression of particular religious beliefs." *Bowen*, 476 U.S. at 703, 106 S. Ct. at 2153-54.

> Addressing the context of public welfare benefits further, the Court in *Bowen* noted,
>
> It [the statutory requirement] may indeed confront some applicants for benefits with choices, but in no sense does it affirmatively compel appellees, by threat of sanctions, to refrain from religiously motivated conduct or to engage in conduct they find objectionable for religious reasons.  Rather, it is appellees who seek benefits from the Government and who assert that, because of certain religious beliefs, they should be excused from compliance with a condition that is binding on all other persons who seek the same benefits from the Government.
>
> ***
>
> Governments today grant a broad range of benefits; inescapably at the same time the administration of complex programs requires certain conditions and restrictions.  Although in some situations a mechanism for individual consideration will be created, a policy decision by a government that it wishes to

> treat all applicants alike and that it does not wish to become involved in case-by-case inquiries into the genuineness of each religious objection to such conditions or restrictions is entitled to substantial deference. Moreover, legitimate interests are implicated in the need to avoid any appearance of favoring religious over nonreligious applicants.

*Id.* at 706-07, 2156. As explained below, Plaintiff fails to adequately plead facts to support a First Amendment violation with respect to the Department's neutral and uniformly applied EDCD Waiver policy.

<u>Establishment Clause</u>

Plaintiff attempts to assert an Establishment Clause claim against DMAS, arguing that the EDCD Waiver policy "establishes other religious standards as the standard for Virginia families." Compl. ¶ 6(g). The Establishment Clause of the First Amendment "prohibits state action with a sectarian legislative purpose or with the primary effect of advancing religion, including fostering an excessive government entanglement with religion." *Glassman v. Arlington County*, 628 F.3d 140, 146 (4th Cir. 2010) (citing *Lemon v. Kurtzman*, 403 U.S. 602, 612-13, 91 S. Ct. 2105, 29 L. Ed. 2d 745 (1971)) (internal quotations omitted). The test for determining whether a legislative act withstands an Establishment Clause challenge requires (1) that the act have a secular purpose; (2) that its principal or primary effect be neither to advance nor to inhibit religion; and (3) that it not foster excessive government entanglement with religion. *Id.* (citing *Lemon*, 403 U.S. at 612-13; *Ehlers-Renzi v. Connelly Sch. of the Holy Child, Inc.*, 224 F.3d 283, 288 (4th Cir. 2000)).

Plaintiff does not allege sufficient facts to establish that DMAS' regulatory and policy provisions do not have a secular purpose. "This first prong of the Lemon test presents a 'fairly low hurdle, which may be cleared by finding a plausible secular purpose on the face of the regulation.'" *Id.* (quoting *Ehlers-Renzi*, 224 F.3d at 288). Plaintiff also fails to assert facts

sufficient to establish that the *principal or primary effect* of the provisions at issue is to advance or to inhibit religion. Plaintiff's bare allegations of discrimination against her religious beliefs and the establishment of "other religious standards" are without factual support. Finally, Plaintiff asserts no facts supporting the conclusion that DMAS' EDCD Waiver policy fosters excessive government entanglement with religion. Accordingly, the Complaint fails to allege a plausible claim for an Establishment Clause violation.

Free Exercise; Neutral Law of General Application

In *Employment Div. v. Smith*, the Supreme Court held that, "under the First Amendment, neutral, generally applicable laws may be applied to religious practices even when not supported by a compelling governmental interest.[10]" 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990) (internal quotations omitted). Notwithstanding the passage of the RFRA in 1993 and the RLUIPA of 2000, there is no indication that the Supreme Court's ruling in *Smith* has been disturbed with respect to Free Exercise challenges to state laws, regulations, or policies outside the contexts of land use regulations and challenges brought by institutionalized individuals.

As recently as last year, the Fourth Circuit cited *Smith*, stating that the Free Exercise clause of the First Amendment does not "relieve an individual of the obligation to comply with a valid and neutral law of general application on the ground that the law proscribes (or prescribes)

---

[10] In response to the Supreme Court's ruling in *Smith*, Congress passed the RFRA of 1993, 42 U.S.C. § 2000bb *et seq*. The purpose of the RFRA was to "restore the compelling interest test as set forth in cases preceding *Smith*, and to guarantee its application in all cases where free exercise of religion is substantially burdened." See *Hobby Lobby*, 134 S. Ct. at 2760-2763, 189 L. Ed. 2d at 687-689; *Hunt Valley Baptist Church, Inc. v. Baltimore City*, No. ELH-17-804, 2017 U.S. Dist. LEXIS 171539 (Dist. MD 2017) (internal quotations and citations omitted). Congress made the RFRA applicable to states using its authority under Section 5 of the Fourteenth Amendment. In 1997, the Supreme Court determined that Congress exceeded its power under Section 5, because, in its view, the statute was not remedial, and thus the RFRA was unconstitutional as applied to state governments. *Id.* (citing *Cty. Of Boerne v. Flores*, 521 U.S. 507, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997)). Invoking authority under the Spending and Commerce clauses, Congress responded to *City of Boerne* by enacting the RLUIPA of 2000, 42 U.S.C. § 2000cc *et seq*. The RLUIPA applies to states but "provides a more narrow range of protection than the RFRA, applying only in the context of land use and institutionalized persons, such as prisoners." *Hunt Valley* at *56-57 (citing 42 U.S.C. § 2000cc *et seq*.).

conduct that his religion proscribes (or prescribes)." *Abdus-Shahid v. Mayor & Balt.*, 674 Fed.

Appx. 267, 271, 2017 U.S. App. LEXIS 118, *8 (4th Cir. 2017) (citing *Employment Div. v.

Smith*, 494 U.S. 872, 879, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990)).

    A law lacks neutrality if it targets religious beliefs or if its object is to infringe upon or

restrict practices because of their religious motivation. *Id.* (citing *Church of the Lukumi Babalu

Aye., Inc. v. City of Hialeah*, 508 U.S. 520, 533, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993)). A

law or policy that is silent as to religion or religious practices is facially neutral. *Abdus-Shahid*,

674 Fed. Appx. at 272. The Fourth Circuit acknowledged that in addition to facial neutrality, it

is also relevant whether the plaintiff alleged any facts from which it can be inferred that the

policy at issue was implemented with an improper motivation. *Id.* at 272-73 (citing *Lukumi

Babalu Aye*, 508 U.S. at 534). In 2017, the Supreme Court explained that when it has rejected

Free Exercise challenges in recent years, "the laws in question have been neutral and generally

applicable without regard to religion. We have been careful to distinguish such laws from those

that single out the religious for disfavored treatment." *Trinity Lutheran Church of Columbia,

Inc. v. Comer*, 137 S. Ct. 2012, 2020, 198 L. Ed. 2d 551, 560 (2017).

    The government is entitled to wide latitude in the enforcement of a facially neutral and

uniformly applicable requirement for the administration of welfare programs reaching many

people. *Bowen*, 476 U.S. at 707, 106 S. Ct. at 2156. "Absent proof of an intent to discriminate

against particular religious beliefs or against religion in general, the Government meets its

burden when it demonstrates that a challenged requirement for governmental benefits, neutral

and uniform in its application, is a reasonable means of promoting a legitimate public interest."

*Id.*

Plaintiff asserts conclusory allegations that DMAS' EDCD Waiver policy is discriminatory towards her religion, but such assertions are not supported by facts. To the extent Plaintiff asserts that DMAS' EDCD Waiver policy is not in fact facially neutral with respect to religion, the Complaint contains no facts to support such assertion. Plaintiff makes no allegation that the policy is not uniformly applied, regardless of religion, to all parents, step-parents, adoptive parents, and legal guardians of minor children enrolled in the EDCD Waiver. Additionally, the Complaint is devoid of any facts showing that the policy was implemented by DMAS with improper motivation against particular religious beliefs or against religion in general. Finally, Plaintiff makes no allegations demonstrating DMAS lacks legitimate governmental interests as related to its policy, nor does Plaintiff allege that DMAS' policy is not a reasonable means of promoting such interests.

Plaintiff's Asserts Mere Conclusory Allegations

The Plaintiff's Complaint fails to assert facts explaining why Plaintiff's allegations come now, more than two years after her son was enrolled in the EDCD Waiver in 2016 and began receiving services. Plaintiff makes no allegations that DMAS changed its policy between the time Plaintiff's son was enrolled in the EDCD Waiver and the date the Plaintiff filed her Complaint.

Plaintiff alleges that because her religion, which she does not name, involves the belief that parents should be the primary caretakers of their children (a belief that would not appear to be limited to the context of religion), DMAS' EDCD Waiver policy is discriminatory because it does not permit Plaintiff's spouse to receive reimbursement from DMAS for fulfilling his caretaker responsibilities. Compl. ¶ 6(g) and attached letter pp. 6-7 of 9 (page ID # 33-34). The Complaint also alleges that DMAS' EDCD Waiver policy discriminates against her family's

religious belief that only a male relative can assume caretaking responsibilities of a male child that involve the child being in a state of undress, and a mother cannot be alone in the home with a male that is not her husband, father, or brother.  Letter attached to Compl., p. 6 of 9 (Page ID# 33).

The Complaint alleges that the policy prevents Plaintiff and her family from using the EDCD Waiver in a manner that allows them "to benefit from the program equally," and that this restriction constitutes a violation of Plaintiff's right to freely exercise her religious beliefs.  Compl. ¶ 6(f),(g).  Plaintiff's real dispute is that DMAS' EDCD Waiver policy prevents her spouse from receiving Medicaid reimbursement for taking care of his step-son.  The policy applies to all individuals enrolled in the EDCD Waiver.  Accordingly, the facts alleged by Plaintiff are insufficient to establish her assertion of unequal access.  Furthermore, Plaintiff asserts no facts supporting the conclusion that the EDCD Waiver is designed to "benefit" a parent or step-parent by reimbursing them for care they provide to their own child or step-child.

Plaintiff fails to allege facts sufficient to establish a substantial burden on her religious beliefs imposed by the Department's EDCD Waiver policy.  The Complaint lacks any facts supporting the notion that because Plaintiff's spouse cannot be an attendant reimbursed by Medicaid, then Plaintiff must abandon her religious beliefs in order for her son to be bathed.  Plaintiff's letter to DMAS states that having the step-parent available at odd hours and at night to assist with tasks such as bathing is helpful.  Letter (2/16/18) Attached to Complaint, page 6 of 9 (Page ID# 33).  Nowhere in the Complaint does it allege that if bathing tasks are performed by the step-parent in accordance with their beliefs and without reimbursement from DMAS, then Plaintiff or her son will be penalized, such as by terminating Plaintiff's son from the EDCD

Waiver.  There are simply no facts in the Complaint substantiating the allegation that Plaintiff must choose between her religious beliefs and her son's enrollment in the EDCD Waiver.

Plaintiff asserts her family cannot "use" the EDCD Waiver without compromising their religious beliefs.  Compl. ¶ 6(g).  Based on the allegations in the Complaint, the only aspect of the EDCD Waiver Plaintiff claims her family is unable to "use" is the ability to receive reimbursement for attendant care services.  Compl. ¶¶ 6(b),(e),(g).  Indeed, Plaintiff has asserted no facts demonstrating that the policy does not apply uniformly to other parents and step-parents with children enrolled in the EDCD Waiver.  The Complaint contains no allegation that DMAS denied Plaintiff's son eligibility for in-home attendant care services or that the regulation and policy prevent her son from receiving such services under the EDCD Wavier.  To the contrary, the letter attached to the Complaint states that Plaintiff's son is receiving services and currently has one care attendant.  The only denial was with respect to Plaintiff's request to enroll her spouse as a second care attendant to receive reimbursement from DMAS.  Compl. ¶ 6(b),(e).  There are no facts in the Complaint suggesting that this denial was motivated by an intent to discriminate against Plaintiff's religion or any religion.

The Complaint contains no facts supporting the proposition that because Plaintiff's son is enrolled in the Virginia Medicaid EDCD Waiver, Plaintiff and her spouse are entitled to benefits themselves, in the form of Medicaid reimbursement.  Plaintiff alleges no facts supporting a parent or step-parent's entitlement to Medicaid reimbursement for caring for their minor child or step-child.  The Complaint lacks any factual support for the conclusion that DMAS violated the Plaintiff's rights under the First Amendment.  Accordingly, the Complaint must be dismissed for failure to state a claim upon which the requested injunctive and retroactive monetary relief can be granted.

## V.    CONCLUSION

For the foregoing reasons, the Department of Medical Assistance Services respectfully requests that the Court grant its Motion to Dismiss the Complaint in its entirety, with prejudice.

Respectfully submitted,

**Department of Medical Assistance Services**

By: _____/s/ Jennifer L. Gobble
    Jennifer L. Gobble (VSB No. 65493)
    Assistant Attorney General
    OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA
    202 North 9th Street
    Richmond, Virginia 23219
    Telephone: (804) 786-4905
    Facsimile:  (804) 371-8718
    Email:  jgobble@oag.state.va.us

MARK R. HERRING
Attorney General

CYNTHIA V. BAILEY
Deputy Attorney General

KIM F. PINER
Senior Assistant Attorney General

JENNIFER L. GOBBLE*
Assistant Attorney General

*Counsel of Record

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 21st day of August, 2018, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, and I mailed a copy by U.S. mail to the

*pro se* Plaintiff at the address below:

Ms. Melinda L. Scott
P.O. Box 1133-2014PMB87
Richmond, VA 23218

        /s/ Jennifer L. Gobble
Jennifer L. Gobble (VSB No. 65493)
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-4905
Facsimile: (804) 371-8718
Email: jgobble@oag.state.va.us
*Counsel for Defendant*