IN THE WESTERN DISTRICT COURT OF VIRGINIA
ABINGDON DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

SEP 05 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

| | |
|---|---|
| MELINDA SCOTT, | ) |
| PLAINTIFF, | ) |
| V. | ) CL. NO. 2:18CV00012 |
| Virginia Department of Medical Assistant Services (VA DMAS), | ) |
| DEFENDANT. | ) |

### RESPONSE

The Plaintiff, in response to the Order dated August 22, 2018, asserts that the Defendant has failed to justify their actions against the Plaintiff. The Defendant, Virginia DMAS, has filed a Motion to Dismiss in order to delay the Plaintiff the privileges of her Constitutional rights. The Defendant has not filed the Motion with an adequate understanding of the socio-economic problems their policies create for persons of religious sects. The Defendant is in denial that there is an injustice suffered by the Plaintiff due to the policies of the Defendant.

I.    Failure to state a claim

Defendant states that the Plaintiff "fails to allege sufficient facts to support these claims". "These claims" being reference to violations of her First Amendment rights. The Defendant has made a contradiction in the pleading. While on one hand the Defendant relies upon the civil coversheet the Defendant overlooks the letter attached to the Complaint which was sent to VA DMAS and drafted by the Plaintiff in February 2018. The letter is part of the Complaint and is sufficient to establish facts. It would be redundant for the Plaintiff to restate every fact in the letter. Accordingly, the Plaintiff stated in paragraph (e) "I have attached a copy of the letter to this pleading to demonstrate the constitutional basis for my request".

Here, The Defendant is asking for <u>evidentiary facts</u> where the Plaintiff is not obligated to do so in the Complaint pleading. The Complaint has made concise statements in accordance with Rule 8. Asking for proof in a pleading is "unknown to the federal practice or to any other system of modern pleading" (*King Vision v. Dimitri's Restaurant 180 FRD 332 (1998)*). As long as there is a "reasonably founded hope that the [discovery] process will reveal relevant evidence" (*Bell Atl. Corp v. Twombly*) the case should go forward. Further, the Court in *Bell Atl. Corp v. Twombly* elaborated to say that an original Complaint "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" (*Bell Atl. Corp v. Twombly*).

## II. Burden on Religion

Defendant quotes *Bowen v. Roy* in support of a statement that certain actions of the government override religious liberties. Defendant has overlooked two crucial words in the quotation. The quotation the Defendant relies upon in *Bowen* says:

> "To maintain an organized society....there is a point at which accommodation would *radically restrict* the operating latitude of the legislature" (emphasis added).

Allowing parents, step-parents, adoptive parents and legal guardians to be paid under VA DMAS policy would not "radically restrict" the operations of the Government of Virginia, nor its agencies or officials. There is nothing "radical" about a parent, step-parent, adoptive parent or legal guardian for being paid for services rendered to a minor child. The Defendant gawks at the notion of parents, step-parents, adoptive parents or legal guardians getting paid through tax payer benefit programs, yet in many other states in the United States, parents, step-parents, adoptive parents and legal guardians can be paid for the same services. In all their wisdom, other state legislatures and policy makers have allowed parents and other guardians to be paid because they are well aware of the financial losses incurred by the parents of disabled children. Clearly, the parents who are suffering financial losses to care for the disabled child need to benefit too. They

should benefit because the money came from their taxes in the first place. The Defendant gives no justified reason the same policy cannot happen in Virginia.

Defendant states that the Plaintiff has failed to demonstrate that the EDCD waiver was designed to "benefit" a parent or step-parent. This is a moot point because it is a material fact that the program is intended to benefit the entire family. The Medicaid program literature says so. Rightly so, because parents, step-parents, adoptive parents and legal guardians incur socio-economic challenges from the constant care of disabled children. The socio-economic challenges include, but are not limited to, inability to maintain employment due to the constant need to give care to the disabled child, an inadequate number of respite hours to alleviate the caretaker for social and financial meetings, loss of wages due to time taken off for the care of a disabled child, lack of social resources to provide specialized care and loss of wages due to the necessity of homeschooling a disabled child.

### III. Virginia DMAS Policy lacks neutrality

Neutrality. By their own admission, the Defendant states that exceptions to religious liberties must be laws that are *neutral*. Through her letter to VA DMAS, the Plaintiff has clearly stated that that there are religious sects which have beliefs about (1) caretakers (2) gender segregation and (3) nakedness (the three issues of dispute in the Plaintiff's letter dated February 16, 2018). There is nothing "neutral" about policies that affect significant daily operations of their lives like who are their caretakers and what they do with their bodies.

The VA DMAS policies which are the subject of this case are being written with a "secular purpose" in mind. Virginia DMAS wants parents in religious sects to transfer the care of their children to others. With restrictions on whom the caretaker can be, religious families are forced to transfer care outside of their religious sect under the program. In Virginia there are religious exemption laws allowing parents to transfer the schooling of their children back to the parents via "homeschooling" (Virginia §22.1-254.1). The same rule should apply to the EDCD waiver.

The primary effect of Virginia DMAS EDCD policy inhibits religion. Just as parents request exemptions from public school attendance because their religious beliefs

advocate that they are the first and primary caretakers of their children, the same religious protections should be afforded to the EDCD program. Otherwise, their policies inhibit religion. The policies of VA DMAS which are the subject of this case are different than the Social Security example the Defendant gave. Social Security is a numbering system which is quite frankly, very neutral. Beliefs about caretakers and personhood (one's body) are far from neutral.

Establishment Clause. The policies of Virginia DMAS that gave cause to this action fail the Establishment Clause test. Their policies have a "sectarian legislative purpose" that is "excessive government entanglement with religion". The policies are disfavored treatment with an improper motivation. They want secular organizations to control religious people's children. Therefore, the Plaintiff's statement holds true that the EDCD waiver policy "establishes other religious standards as the standard for Virginia families" (paragraph (g)).

There is no legitimate public interest advanced by denying religious sects' their right to be the primary caretakers of their own children in accordance with their religious beliefs. Although the Defendant states that the Plaintiff has not pleaded any allegations to demonstrate that the Defendant lacks legitimate governmental interest, the Plaintiff has in fact pleaded such allegations. The Plaintiff clearly stated in a *concise* manner, according to Rule 8: "their policies coerce compliance with their standards" (paragraph (f)). The government interest being advanced here is the secular control of religious people's children.

### IV. Court's jurisdiction

The Defendant has stated that "the instant case filed against DMAS does not implicate the *Ex Parte Young* exception". However, 9(a)(1)(A) does not require the Plaintiff to allege "a party's capacity to sue or be sued". Defendant improperly seeks to fault the Plaintiff's pleading for not discussing the Eleventh Amendment's application to the Defendant is this case.

Notwithstanding, since this court has ordered the Plaintiff to respond and Rule 9(a)(1) states that a party shall answer for a capacity to be sued "when required to show

that the court has jurisdiction" the Plaintiff will answer. Plaintiff asserts that the Supreme Court has identified a difference between Eleventh Amendment immunity when it comes to monetary damages and injunctive relief. Here, the Plaintiff is not seeking monetary damages. The Supreme Court has often declared certain actions of government agencies and officials "unconstitutional" while not issuing monetary relief due to Eleventh Amendment immunity.

The doctrine of qualified immunity protects government agencies "from liability for civil damages insofar as much as their *conduct* does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" (*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (emphasis added). Here, the Defendant, by counsel, well knowing of the Virginia Human Rights Act and the Constitution of the United States, and being supplied the letter from the Plaintiff in advance, could have consented to a suit. Their choice to attack jurisdiction is a willful act to delay the Plaintiff her constitutional rights.

While money is involved here, the Plaintiff is not seeking monetary damages nor an "award". The Plaintiff is seeking a *retroactive correction to a policy* that would incidentally *release a payment legally*. The Plaintiff (the EOR) cannot release payments to the attendant (her legal spouse) without authority from the court. Plaintiff asserts that asking for the payments from March 2018 forward is not an "award". What the Plaintiff is asking for is injunctive relief to rectify an unconstitutional policy that should not have denied her capacity to release the payments in the first place.

The Defendant has quoted *Edelman v. Jordan* and demonstrated that "remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief". The Plaintiff has also asked that the policies of DMAS be judicially corrected to grant the second form of relief the Plaintiff requests ("permit my legal spouse to be paid as an Attendant under the EDCD waiver program"). Since the Supreme Court has not allowed Government agencies and officials to use the Eleventh Amendment to omit themselves from proper *conduct* toward citizens it is proper that the Defendant is held accountable for their conduct by being named as a Defendant. They owe a duty to the Plaintiff to justify the constitutionality of their actions.

Further, Virginia DMAS is a Government defendant. They are a branch of the Commonwealth of Virginia. They are properly named as a defendant. Article III,§2,

clause 1 of the US Constitution grants federal courts the authority to hear cases between a state and the citizen thereof. Virginia DMAS, by counsel, claims that they are only an "agency" and "branch of the Government". Defendant has been given its authority to create policy from the Commonwealth of Virginia. They are a piece of the Government with the capacity to be sued.

## V.   Plaintiff's standing

Defendant stated that the Plaintiff "cites no authority allowing her to represent the interests of…her spouse in a court of law". The Plaintiff denies that she is representing her spouse. The Plaintiff has made herself the sole Plaintiff because the injunctive relief she requests are actions that she has to take as the "EOR" (Employer of Record) on behalf of her son. Asking for injunctive relief to "permit my legal spouse to be paid as an Attendant" is an action that the Plaintiff has authority over. According to Medicaid policy, the EOR has to process timesheets. Accordingly, the Plaintiff needs legal permission to manually approve the timesheets in the electronic PPL system. Under Medicaid policy the EOR holds the final authority to process timesheets.

By their own admission, the Defendant has stated, quoting *Brown*, "'[t]he near uniform proscription on non-lawyers representing others in court is based on the compelling state interest in regulating the practice of law, and *what is at stake for the litigant*, including the finality of the *adjudication of rights in question*." (emphasis added). In her Complaint and Response, the Plaintiff has mentioned the *effects* of the policy on her son and spouse. According to the standard in *Brown*, the Plaintiff is demonstrating in her Complaint and Response "what is at stake for the litigant" as well as "the adjudication of rights in question". The rights in question are First Amendment religious liberties. They are of supreme importance and not a trivial matter.

VI. Plaintiff's explanation for the timing of filing

Although the Plaintiff does not owe the Defendant a duty to explain why she filed her suit when she did, the Plaintiff will answer the Defendant about the timing of filing since she has been ordered by the court to respond.

As stated in the Complaint, the Plaintiff's minor child was found eligible and enrolled in the EDCD program in April 2016. Between April 2016 and March 2017 the Plaintiff had to navigate a poorly designed PPL system in order to enroll her child in Medicaid's managing company "PPL". It is no secret to families on the EDCD program that enrolling in "PPL" is an absolute logistical nightmare. The Plaintiff was denied the ability to be the EOR for her minor child because she had an EIN. The Plaintiff operated a small business with an EIN at that time.

Here is another way in which the policy of Virginia DMAS hurts Virginia families. Those who are self employed cannot even act as EOR for their own child. At that time, the Plaintiff was a single parent. The non-custodial parent (biological father) of the minor child had his Visitation rights terminated in 2012. The Plaintiff was the only caretaker for the disabled minor child (her son) yet also had the duty to be the provider. So while single parents have a duty to provide financially for their disabled minor child they are caught in a "Catch 22" under the EDCD program. They have to be self employed because they can't go to work (due to their duty to care for their disabled child 24/7) yet they can't function as an EOR to help get them care so they can go to work.

Between April 2016 and October 2016 the Plaintiff had to search for another adult to be willing to be the EOR for her son. In May 2016 the Plaintiff enrolled one Attendant who Medicaid/PPL never paid. The Plaintiff is a former foster child and is estranged from her relatives for good cause and upon the recommendation of the Foster Care Alumni Association. Asking an acquaintance or friend to manage her finances is not a realistic expectation.

Unable to find another adult to be the EOR on behalf of her son, the Plaintiff found a nursing agency to act as the Service Facilitator. Between October 2016 and February 2017 the Plaintiff received sporadic, inconsistent services. After waiting for months for the Service Facilitator to find her a Nurse Attendant that could work the

approved 39 hours and after being told multiple times they couldn't find staff, the Plaintiff threatened to sue the Nurse Agency. In retaliation, the Nurse Agency made a malicious call to CPS against the Plaintiff for allegations that do not even legally constitute "abuse and neglect" under Virginia law.

In March 2017 the Plaintiff legally married her current spouse and he was willing to be the EOR. The Plaintiff and her spouse lived in separate states until June 2017. In March 2017 the Plaintiff hired a female attendant. While the Plaintiff had female attendants the Plaintiff modified the bathing assistance administered. The Plaintiff also had issues with attendants coming into their home. The Plaintiff then proceeded with this lawsuit. The minor child is in need of a different bathing assistance program to relieve chronic joint pain. It is beyond the physical capacity of the Plaintiff to coordinate alone the bath soaking needed for the minor child. It will involve filling and draining inflatable medical pools. The Plaintiff is a self-employed, homeschooling, ecological breastfeeding mother, and a wife. The Plaintiff was pregnant from June 2017 and March 2018. Adding on top of that a pro-se lawsuit requires finding more *time* when there is already little time to spare.

Although the Plaintiff holds a Bachelor's degree, she has been driven under the Federal Poverty Level due to a bad EDCD waiver policy which in turn means that she cannot afford to hire an attorney. She has only been legally married for a little more than a year. Her husband maintains his own residential address and finances (The Plaintiff's spouse maintains separate finances to avoid quarrels). The Plaintiff's spouse's finances go primarily to debts that he acquired before their marriage.

Not being able to afford an attorney, the Plaintiff had to proceed pro-se. It takes time for a pro-se litigant to research and do the work required to defend themselves. There has been no change in the religious beliefs of the Plaintiff between the time of enrollment (April 2016) and the time of filing the suit (April 2018). If the Plaintiff had more money she would have brought this suit a year ago when she got legally married.

Summary of timeline.
- April 2016: Minor child is found eligible to participate in the EDCD program
- April 2016: Plaintiff meets with a nursing company that enrolls her

- May 2016: Plaintiff moves to a new county and hires an attendant within her religious sect. The minor child begins to receive services with a modification in bathing needs. PPL delays enrolling the Plaintiff as EOR and never pays the Attendant. The Attendant quits.
- May 2016-September 2016: Plaintiff tries to navigate a difficult process to be enrolled as the EOR. PPL, the managing company, continues to send notices of different forms that need to be corrected.
- August 2016: Thinking that the enrollment process as the EOR is done, the Plaintiff hires a new attendant.
- September 2016: Attendant breaks the employee contract and is laid off. In retaliation, the attendant makes a malicious CPS call and states the Plaintiff's religion as an allegation.
- September 2016: PPL finally informs the Plaintiff that she cannot be the EOR because she has an EIN. Plaintiff is finally informed that she needs something called a "service facilitator" to be enrolled as the EOR for the CD ("consumer directed") option
- October 2016-February 2017: Unable to be the EOR due to Medicaid policy, the Plaintiff asks a nursing staff agency to find her a nurse for the 39 hours she needs. After waiting four months, and only being given sporadic services, the Plaintiff threatens to sue the agency. In retaliation, the company makes a malicious CPS call for allegations that do not legally constitute "abuse and neglect".
- March 2017: Plaintiff becomes legally married and asks her spouse to be the EOR
- March 2017-November 2017: Plaintiff hires a female attendant who also does a modified bathing routine. The female attendant stole jewelry from her household and broke the employee contract several times. Plaintiff reduces the female attendant's hours for misconduct
- November 2017-June 2018: The attendant continues to break the employee contract and is laid off in June 2018
- April 2018: Plaintiff finds some extra time to file this suit *pro-se*

## VII. Deprivation due to Policy

The Defendant has failed to demonstrate that the Plaintiff has not properly stated a claim which is a civil rights deprivation. "To prove that a governmental entity is liable under §1983 for constitutional violations committed by its employees, the plaintiff must show that the entity's policy 'was the moving force of the constitutional violation'" (*Scott v Wise County Dept. of Social Services, et al quoting Polk Cty. V. Dodson, 454 US 312, 326 (1981) 4$^t$ Cir. Va. (2017)*). The Plaintiff has stated clearly in her Complaint that the deprivation of her civil rights has come "through an official policy or custom" (*Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. Va. 2003)*). The Plaintiff has clearly stated in her Complaint that the deprivation of her civil rights in this matter has come from "an express policy, such as a written ordinance or regulation".

**Written Ordinance or Regulation**. Under paragraph (b), the Plaintiff stated that the written ordinance and regulation was "DMAS EDCD Manual Chapter II, pg. 19". Again, the Plaintiff stated in paragraph (d) of her complaint that "Chapter II, pg. 19" was the reason for the dispute.

**Express Policy**. Under paragraph (f) in the pleading, the Plaintiff clearly stated in her Complaint that: (1) "I assert that *the policy* of VA DMAS EDCD program (Administrative Code) violates the First Amendment because it discriminates against the religious practices of my family" (emphasis added) and (2) "The EDCD *policies* make it impossible for those with certain religious beliefs to equally receive adequate services" (emphasis added) and (3) "Their *policies* attempt to restrict the free exercise of one's religion at the expense of not receiving the tax payer benefits they are entitled to: (emphasis added) and (4) "Their *policies* coerce compliance with their standards at the expense of my religious beliefs" (emphasis added) and (5) "Or in other words, that I can either abandon my religious beliefs in order to comply with their *policies* or forfeit my tax payer benefits" (emphasis added).

Again, in paragraph (g) of the Complaint, Plaintiff has stated: (1) "The EDCD *policy* restricts who may be the caretaker under the program." (emphasis added) and (2) "By making this *policy* they have discriminated against my religion." (emphasis added)

and (3) In a covert manner, the EDCD waiver *policy* establishes other religious standards as the standard for Virginia families." (emphasis added). The Plaintiff has stated numerous times in the pleading that the actions of Virginia DMAS which deprive her of her constitutional rights are due to Virginia DMAS policy.

### VIII. Civil Rights

The Defendant has failed to demonstrate that the Plaintiff's First Amendment rights have not been violated. It is an issue of material fact that there are religious sects which have beliefs about (1) caretakers (2) gender segregation and (3) nakedness (the three issues of dispute in the Plaintiff's letter dated February 16, 2018). The Defendant's failure to research and become familiar with religious beliefs that may affect their programs has led to bad policy making. The Defendant's failure to acknowledge the rights of these religious sects has also led to bad policy making. The Defendant refuses to acknowledge that their EDCD policies do in fact limit the free exercise of one's religion under the program. The Defendant refuses to acknowledge that the tax payer dollars which have been taken from the Plaintiff are being withheld from her due to her religious beliefs. The Defendant refuses to acknowledge the Plaintiff's First Amendment rights.

### IX. Issues of Material Fact

If permitted under Rule 56(c)(1)(A) the Plaintiff can submit documentation of everything she has stated in her Response. She can also submit documentation of the following material facts to support this Response: (1) emails between the Plaintiff and Defendant. The EDCD manual is public. Under Rule 26(a)(1)(A)(ii), the Plaintiff can also provide copies to the Defendant. These issues of material fact cannot be disputed.

The EDCD Manual states clearly that the spouse of the biological parent of a disabled child cannot be paid. The e-mails exchanged between Virginia DMAS and the Plaintiff undeniably demonstrate that the Plaintiff was told that her spouse could not be paid under the policies of Virginia DMAS. Together with the letter submitted in the Plaintiff's Complaint, these documents clearly show that a genuine dispute exists between the Plaintiff's civil rights and the policies of Virginia DMAS EDCD program.

## X.     Damages suffered by the Plaintiff

The Plaintiff stated in her pleading that she was not able to benefit equally for the program. The Defendant states that the Plaintiff has not pleaded facts. What the Plaintiff stated was: "My family cannot use the EDCD waiver in a manner that allows us to benefit from the program equally". That is a *concise* fact according to Rule 8. The Plaintiff has made a *concise* statement without stating evidentiary facts. The Plaintiff should not have to bear the burden of excessive details of her personal business at the Complaint stage. However, since the Plaintiff has been ordered to respond, the Plaintiff shall states her damages here.

<u>Injury in fact</u>. The Plaintiff has incurred several damages as a result of a 42 USC §1983 violation of her First Amendment rights. The Plaintiff has suffered a loss of wages and educational opportunities as a result of not being able to utilize her spouse as an attendant support. The Plaintiff's spouse began sharing a residence with her in June 2017. In December 2017 the Plaintiff and her spouse began to maintain different residences in order to maintain their finances separately.

In August 2017 the Plaintiff began classes at law school. The Plaintiff agreed to pay her spouse for the care of the disabled minor child who is the subject of this case. The Plaintiff was not aware that EDCD policy prevented her from doing so. *The Plaintiff's spouse has his own financial obligations that preceded their marriage. He has his own legal obligations to be employed.* The Plaintiff agreed to pay her spouse for long term care of the minor child because it made the situation fair. It is not reasonable to expect a step-parent to sacrifice their income for a non-biological child. The Plaintiff notes that this is the reason step-parents are not served child support orders.

In July 2017 the Plaintiff wrote the IRS to dissolve her EIN. She attempted to dissolve her EIN in order to become the EOR and pay her spouse. Due to the way IRS handles EINs, the EIN issue was not resolved until around December 15, 2017. The Plaintiff was told in December 2017 and again in February 2018 that her spouse could not be paid as an Attendant. Unable to forego his legal obligations to be

employed and financial obligations that preceded their marriage, the Plaintiff's legal spouse could no longer forego paid employment to assist her in attending law school.

Unable to pay her spouse, the Plaintiff had to withdraw from law school. The Plaintiff's spouse could no longer afford to work for free. Today, the Plaintiff could be sitting in her second year of law school. Instead, the Plaintiff has to spend time and energy on trying to break down civil rights barriers just to return to law school.

The Plaintiff simply wants to go to law school. Being a self-employed lawyer is the best job the Plaintiff can do consistent with her religious beliefs about fertility management and homeschooling together with her education level. The Plaintiff holds a Bachelor's degree and is not trained in trade school self-employment trades.

While one could argue that citizens should postpone child bearing until after graduate school, that is yet another argument that impedes on religious sects who have beliefs about marriage and fertility management. It is no one's right to tell the Plaintiff in what order she should manage her fertility and education. The solution is simple. By rectifying bad policy the "adjudication of rights" can help benefit a Virginia family, perhaps others in the future.

The minor child's non-custodial biological parent is $20,000 in arrears on child support for the minor child. This further complicates the need for alternate sources of childcare funding for the disabled child. The Plaintiff's educational level and earning potential exceeds that of her spouse. Yet without adequate domestic support and childcare assistance, the Plaintiff cannot lift her family beyond the FPL.

The Plaintiff's religion dictates that parents are their first caretakers. The Plaintiff has had to compromise her religious beliefs in the past in order to comply with Federal and Virginia tax payer benefit laws (often termed "welfare"). She shouldn't be expected nor coerced to continue to compromise those beliefs. The Plaintiff should be able to use the EDCD waiver in a manner consistent with her religious beliefs

The Plaintiff has also suffered inconvenience and grief as a result of bad DMAS policy. The extra time required to file pleadings and the strain on her marriage has cause both inconvenience and grief.

Summary of injuries. To date, the Plaintiff has incurred the following injuries: (1) grief (2) inconvenience (3) $4,500 in loans for law school tuition (4) $1,000 in loan money for law school books (5) other educational expenses totaling $500 of loan money.

Causation. The Defendant has caused the Plaintiff's injuries and damages because of their policy. Their policy denies the Plaintiff adequate resources that she is entitled to as a tax payer. If the Plaintiff had been able to pay her spouse, the Plaintiff's spouse would not have had to quit the job in order to find income elsewhere.

Redressability. Should this Honorable court grant the relief the Plaintiff is seeking the Plaintiff would have the ability to return to law school and raise her family above the FPL (Federal Poverty Level). Being a self-employed lawyer would allow the Plaintiff to manage her fertility, childcare duties and financial obligations toward her children in a manner consistent with her religious beliefs.

## XI.    Ethics

The Plaintiff asserts that the purpose of law in general is to create an ethical, socially just society. The Supreme Court has consistently ruled that justice and fairness be the outcome of each suit. "The facts of each case must always be weighed in determining whether personal jurisdiction would comport with fair play and substantial justice" (*Burger King Corp. v. Rudzewicz* 471 US 462 (1985)).

Here, while the Defendant has pleaded a well skilled and impressive response, the Defendant's response lacks an ethical standard that should be applied when evaluating legal pleadings. The Defendant has filed this pleading with the intent to win an argument rather than secure the civil rights afforded by the Constitution of the United States. The Defendant has completely disregarded whether or not their policies and legal writings are being applied in an ethical manner to create a socially just society.

The Defendant has, in an egregiously demeaning manner stated that the "Plaintiff's real dispute is that DMAS' EDCD Waiver policy prevents her spouse from receiving Medicaid reimbursement for taking care of his step-son". The Defendant is in denial that the Plaintiff has genuine religious beliefs and seeks to

paint a picture of the Plaintiff as being interested in monetary benefits solely. The Defendant attacks the Plaintiff's pleading as being insufficient because she has not named her religion. The Plaintiff does not owe a duty to the Defendant to name her religion in the Complaint stage. Naming one's religion could lead to further discrimination. Naming one's religion is an evidentiary fact which is not necessary at the Complaint stage. The Defendant is asking for evidentiary facts instead of statements in accordance with Rule 8.

**WHEREFORE**, having shown this court that the policies of Virginia DMAS have deprived the Plaintiff of her constitutional First Amendment rights, the Plaintiff moves this Honorable court to grant all the relief requested in her Complaint.

I ASK FOR THIS

*/s/ Melinda Scott*

Melinda Scott, *pro-se*
PO BOX 1133-2014PMB87
Richmond, Virginia
540.692.2342
mscottw@gmu.edu

## Certificate of Service

I, Melinda Scott, have mailed a copy of this Response to the Defendant, by counsel, to Jennifer L. Gobble, Assistant Attorney General, at 600 East Broad St., 6th flr., Richmond, Virginia 23219 on this ___4th___ day of ___September___, 2018.

Respectfully submitted,

Melinda Scott, *pro-se*
PO BOX 1133-2014PMB87
Richmond, Virginia
540.692.2342
mscottw@gmu.edu