## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## Big Stone Gap Division

| | |
|---|---|
| MELINDA SCOTT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>VIRGINIA DEPARTMENT OF )<br>MEDICAL ASSISTANCE )<br>SERVICES, )<br>Defendant. ) | Civil Action No.: 2:18cv00012 |

### DEFENDANT'S REPLY

The Virginia Department of Medical Assistance Services ("DMAS" or "Department"), by counsel, and pursuant to the Order entered by this Court on August 22, 2018 (ECF # 17), submits the following Reply to Plaintiff's Response to Defendant's Motion to Dismiss and Memorandum in Support of Motion to Dismiss ("Pl. Response").

### I. PRELIMINARY STATEMENT

Plaintiff's Response does not change the Court's analysis of Defendant's Motion to Dismiss. As detailed herein, Defendant's Motion to Dismiss should be granted, because (i) Plaintiff does not contest DMAS's sovereign immunity; (ii) Plaintiff's attempt to introduce additional facts in her Response is improper; and (iii) even if the Court considers the additional facts offered by Plaintiff, the facts remain insufficient to state a claim against DMAS.

### II. SOVEREIGN IMMUNITY

A. Plaintiff Does Not Deny DMAS is Entitled to Sovereign Immunity.

Plaintiff's assertion that DMAS "could have consented to suit" is an admission that DMAS has not done so and an acknowledgement that consent is necessary. Pl. Response at 5. Plaintiff has the burden of proving the existence of subject matter jurisdiction, and Plaintiff has pointed to no

waiver of sovereign immunity by DMAS, nor any abrogation of immunity by Congress. The Fourth Circuit explained:

> A state may waive its immunity in two ways. *See Booth v. Maryland*, 112 F.3d 139, 145 (4th Cir. 1997). It may 'directly and affirmatively waive its Eleventh Amendment immunity in a state statute or constitutional provision, as long as the provision explicitly "specifies the state's intention to subject itself to suit in federal court."' *Id.* (quoting *Atascadero State Hosp.*, 473 U.S. at 241 (brackets in original)). Alternatively, it may 'waive its immunity by voluntarily participating in federal spending programs when Congress expresses "a clear intent to condition participation in the programs . . . on a State's consent to waive its constitutional immunity."' *Id.* (quoting *Atascadero State Hosp.*, 473 U.S. at 247 (ellipses in original)).
>
> But because of the Eleventh Amendment's vital role in preserving the federal balance, determinations of whether a State has waived its immunity are subjected to 'stringent,' exacting standards. *College Savings Bank*, 1999 WL 412639, at 7 (quoting *Atascadero State Hosp.*, 473 U.S. at 241). Thus, a court may not find a waiver absent an 'unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment.' *Atascadero State Hosp.*, 473 U.S. at 238 n.1; *see also Pennhurst State School v. Halderman* ("*Pennhurst I*"), 451 U.S. 1, 17, 67 L. Ed. 2d 694, 101 S. Ct. 1531 (1981) (citations omitted); *Edelman v. Jordan*, 415 U.S. 651, 673, 39 L. Ed. 2d 662, 94 S. Ct. 1347 (1974).

*Litman v. George Mason Univ.*, 186 F.3d 544, 550-51 (4th Cir. 1999).

"Congress may abrogate the States' Eleventh Amendment immunity, but only by stating unequivocally its desire to do so and only pursuant to a valid exercise of constitutional authority." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 484, 2005 U.S. App. LEXIS 11068, at *20 (4th Cir. 2005) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55, 134 L. Ed. 2d 252, 116 S. Ct. 1114 (1996)). In *Constantine*, the Court found that Title II of the Americans with Disabilities Act clearly and unambiguously expressed congressional intent to abrogate States' Eleventh Amendment immunity, providing that "[a] State shall not be immune under the Eleventh Amendment to the Constitution of the United States from an action in Federal or State Court of competent jurisdiction for a violation of this chapter." *Id*. Plaintiff has pointed to no such language abrogating DMAS' immunity in this case.

The Supreme Court has held that waiver will be found "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for

~ 2 ~

any other reasonable construction." *Florida Dep't. of Health & Rehab. Servs. v. Florida Nursing Home Ass'n.*, 450 U.S. 147, 150, 101 S. Ct. 1032, 1034, 7 L. Ed. 2d 132, 136 (1981). The Court also stated, "the mere fact that a State participates in a program through which the Federal Government provides assistance for the operation by the State of a system of public aid is not sufficient to establish consent on the part of the State to be sued in the federal courts." *Id.* (quoting *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S. Ct. 137, 39 L. Ed. 2d 662 (1974)). This was reiterated by the Fourth Circuit in *Litman*, stating, "the mere receipt of federal funds cannot establish that a State has consented to suit in federal court." *Litman*, 186 F.3d at 551 (internal quotations and citations omitted). Further, the fact that a State agency agreed explicitly to obey federal law in administering a system of public aid "can hardly be deemed an express waiver of Eleventh Amendment immunity." *Florida Dep't. of Health*, 450 U.S. at 150 (citing *Edelman*, 415 U.S. at 673-74.).

 Plaintiff has not alleged DMAS expressly waived its Eleventh Amendment immunity by virtue of its acceptance of federal funds for the administration of the Medicaid program. Even if Plaintiff had alleged such, Plaintiff has pointed to no clear and unambiguous language in the Medicaid Act or elsewhere reflecting congressional intent to abrogate DMAS' Eleventh Amendment immunity as related to Plaintiff's claims. The Response does not challenge DMAS' entitlement to sovereign immunity as an arm of the state. Accordingly, DMAS requests the Court to consider this argument undisputed.

 B.  Plaintiff's Request for Retroactive Relief is Barred by the Eleventh Amendment.

Plaintiff asserts she is not seeking monetary damages and affirmatively states she seeks retroactive injunctive relief to correct a policy "that would incidentally release a payment legally." Pl. Response at 5. The payment to which Plaintiff refers is related to her spouse's timesheets dating

back to March 2018.  Compl. at 8.  The limited *Ex Parte Young* exception to Eleventh Amendment immunity applies to State officials and permits only prospective, not retrospective, relief.  *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908); *Edelman v. Jordan*, 415 U.S. 651, 677, 94 S. Ct. 1347, 1362 (1974); *Antrican v. Odom*, 290 F.3d 178, 186 (4th Cir. 2002).

As stated in Defendant's Memorandum in Support of Motion to Dismiss, the *Ex Parte Young* exception to Eleventh Amendment immunity is not implicated here, as DMAS is a State agency, not a State official.[1]  *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) ("Moreover, the [*Ex Parte Young*] exception is narrow:  It applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." (internal citations omitted)); *S.C. State Ports Auth. v. FMC*, 243 F.3d 165, 177 (4th Cir. 2001) ("This [*Ex Parte Young*] exception is irrelevant to the case at bar, as the private party brought the complaint for both legal and equitable relief against the State Ports Authority itself."); *Caperton v. Va. DOT*, No. 3:15-cv-00036, 2015 U.S. Dist. LEXIS 145926, at *8-9 (W.D. Va. 2015) ("That exception [*Ex Parte Young*], however, applies only to claims against state officials. The Supreme Court has made clear that it 'has no application in suits against the States and their agencies, which are barred regardless of the relief sought.'" (quoting *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993)).  Plaintiff has neither pointed to a waiver of immunity by DMAS, nor any applicable exception to DMAS' Eleventh Amendment immunity.

---

[1] If a State official had been named, however, the *Ex Parte Young* exception still would not be implicated, as Plaintiff admits she seeks retroactive injunctive relief, which is prohibited.  *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908);   *Antrican v. Odom*, 290 F.3d 178, 186 (4th Cir. 2002).

### III.     STANDING

In her Response, Plaintiff expressly states she is the "sole Plaintiff" and that the injunctive relief she seeks is with respect to an action over which she has control. Pl. Response at 6. Accordingly, the Department respectfully requests the Court to consider undisputed the Department's arguments that Plaintiff cites no authority allowing her to litigate the interests of her minor child or her spouse.

Plaintiff bears the burden of establishing the elements of standing. *Barrett v. Minor*, No. 1:15-cv-32, 2015 U.S. Dist. LEXIS 115087 at *10 (W.D. Va. 2015) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). The elements include: 1) an injury in fact – a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical; 2) causation – a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant; and 3) redressability – a likelihood that the requested relief will redress the alleged injury." *Id*. (citing *McBurney v. Cuccinelli*, 616 F.3d 393, 402 (4th Cir. 2010)) (internal quotations omitted). Plaintiff appears to assert in her Response that the injury is that her "family cannot use the EDCD waiver in a manner that allows us to benefit from the program equally." Pl. Response at 12, Compl. ¶ 6(g). To the extent this can be considered a concrete harm suffered by Plaintiff, which the Department does not concede, Plaintiff has not established a fairly traceable connection between the injury and the Department's EDCD Waiver policy. Plaintiff asserts the EDCD Waiver policy "denies the Plaintiff adequate resources that she is entitled to as a tax payer, and [i]f the Plaintiff had been able to pay her spouse, the Plaintiff's spouse would not have had to quit the job to find income elsewhere." Pl. Response at 14. The inability to pay a spouse to care for a child or step-child is not a policy applied uniquely to Plaintiff. The Complaint and Response fail to assert facts

sufficient to support the asserted entitlement to benefits in the form of Medicaid reimbursement, such that there potentially could be any plausible injury.

The Response includes a discussion of "damages" suffered by Plaintiff under the subheading "Injury in fact." Pl. Response at 12-14. As detailed further below, these facts and allegations are not properly before the Court and cannot be considered.

## IV.   ADDITIONAL FACTS IN PLAINTIFF'S RESPONSE

A. The additional facts in Plaintiff's Response are not properly before the Court.

The Response presents many new facts not asserted in the Complaint. This Court previously upheld the longstanding principle that in determining a motion to dismiss, a court is limited to the facts set forth in the Complaint, and new facts set forth in a plaintiff's response cannot be considered. *Altizer v. Town of Cedar Bluff*, No. 1:14-cv-00007, 2014 U.S. Dist. LEXIS 76491, at *4-5 (W.D. Va. 2014) (citing *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")); *Marsh v. Va. DOT*, No. 6:14-cv-00006, 2014 U.S. Dist. LEXIS 167333, at *25-26 (W.D. Va. 2014); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011) ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion."). Accordingly, the additional facts in Plaintiff's Response cannot be considered.

B. Even if considered by the Court, the additional facts remain insufficient to state a claim.

Should the Court determine that some or all of the new facts alleged in Plaintiff's Response can be considered, such facts do not change the analysis of the Department's Motion to Dismiss. The new facts asserted by Plaintiff remain insufficient to state a claim against DMAS.

1. Pleading Requirements of Rule 8(a) of the Federal Rules of Civil Procedure.

Plaintiff alleges the Department is asking for "evidentiary facts," a term used before the Federal Rules of Civil Procedure were promulgated.  Pl. Response at 2, See WRIGHT & MILLER, 5 Fed. Prac. & Proc. Civ. § 1216 (3d ed. 2004) ("The substitution of 'claim showing that the pleader is entitled to relief" for the code formulation of the 'facts' constituting a 'cause of action' was intended to avoid the distinctions drawn under the codes among 'evidentiary facts,' 'ultimate facts,' and 'conclusions' and eliminate the unfortunate rigidity and confusion surrounding the words 'cause of action' that had developed under the codes."); see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 575 (2007) (Stevens, J., dissenting) (citing 5 Fed. Prac. & Proc. Civ. § 1216).

The quotation in Plaintiff's Response from the decision in *King Vision Pay Per View v. J.C. Dimitri's Restaurant*, 180 F.R.D. 332, 333 (N.D. Ill. 1998), is taken out of context.  That opinion dealt with a defendant's failure to abide by the requirement in current Rule 8(b)(1)(B) that the defendant's responsive pleading must "admit or deny the allegations asserted against it by an opposing party." The defendant in that case, in 30 of 35 paragraphs of its responsive pleading, stated: "Neither admit nor deny the allegations of said Paragraph --, but demand strict proof thereof." *King Vision*, 180 F.R.D. at 333.  The court found that this response was a violation of Rule 8(b)(1)(B) and an "unacceptable 'demand' for 'strict proof,' a concept that to this Court's knowledge is *unknown to the federal practice or to any other system of modern pleading*." *Id.* (emphasis added).  The *King Vision* case did not address a defendant's motion to dismiss or Rule 8(a)(2) and has no application here.

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The requirements for stating a claim under Rule 8(a)(2) were discussed at length by the Supreme Court in *Twombly*.  A plaintiff is required to state facts sufficient to "raise a right to relief above the speculative level," alleging a claim that is "plausible

on its face" rather than merely "conceivable." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974; *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 56 U.S. at 678, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 546, 127 S. Ct. at 1964). The plaintiff must "provide the 'grounds' of his 'entitlement to relief'" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal citation omitted). For the reasons stated below, the additional facts asserted in Plaintiff's Response, if considered, are insufficient to establish a plausible claim against DMAS.

    2. Section 1983

To state a claim for violation of civil rights under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived her of a right secured by the constitution or laws of the United States and that such deprivation proximately caused the plaintiff's damages. See *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). Unlike local governing bodies that can be sued directly under 42 U.S.C. § 1983 for monetary, declaratory, or injunctive relief, it is well settled that neither a State nor its officials acting in their official capacities are "persons" within the meaning of § 1983 and therefore cannot be sued under the statute. *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989); *Melinda Scott v. Wise County Dept. of Social Services, et al.*, 2:17-cv-6, 2017 U.S. Dist. LEXIS 128448 (W.D. Va. 2017); *Beverly v. Lawson*, 3:10-cv-83-HEH, 2011 U.S. Dist. LEXIS 12844 *13 (E.D. Va. 2011). Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for

litigants who seek such a remedy against a State unless the State has waived its immunity. *Will*, 491 U.S. at 65-66, 109 S. Ct. at 2309. None of the additional facts asserted in Plaintiff's Response impacts the analysis of whether a State agency is a "person" under § 1983.

Plaintiff argues "the deprivation of her civil rights in this matter has come from 'an express policy, such as a written ordinance or regulation.'" Pl. Response at 10. This standard, which permits suits under §1983 on the basis of an official policy or custom, is applicable only to claims against local governmental entities. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). For the reasons stated above and in the Department's Memorandum in Support of Motion to Dismiss, the Complaint lacks sufficient facts to state a claim under § 1983.

3. First Amendment

Plaintiff's Response argues the EDCD Waiver policy lacks neutrality, yet admits it was created "with a secular purpose in mind." Pl. Response at 3. The Establishment Clause of the First Amendment "prohibits state action with a sectarian legislative purpose or with the primary effect of advancing religion, including fostering an excessive government entanglement with religion." *Glassman v. Arlington County*, 628 F.3d 140, 146 (4th Cir. 2010) (citing *Lemon v. Kurtzman*, 403 U.S. 602, 612-13, 91 S. Ct. 2105, 29 L. Ed. 2d 745 (1971)) (internal quotations omitted). The test for determining whether a legislative act withstands an Establishment Clause challenge requires (1) that the act have a secular purpose; (2) that its principal or primary effect be neither to advance nor to inhibit religion; and (3) that it not foster excessive government entanglement with religion. *Id*. (citing *Lemon*, 403 U.S. at 612-13; *Ehlers-Renzi v. Connelly Sch. of the Holy Child, Inc.*, 224 F.3d 283, 288 (4th Cir. 2000)). Plaintiff admits the first prong of the Lemon test is satisfied; that the purpose of the EDCD Waiver policy is secular, meaning not

concerned with religion or religious belief.  Pl. Response at 3, See Oxford American Desk Dictionary.

With respect to the second prong of the test, Plaintiff asserts "the primary effect of the Virginia DMAS EDCD Waiver policy inhibits religion."  Pl. Response at 3.  Neither the Complaint nor the additional facts set forth in Plaintiff's Response present sufficient facts establishing a plausible claim that *primary effect* of the EDCD Waiver policy inhibits religion.  In fact, Plaintiff asserts the EDCD Waiver program is designed to "benefit the entire family."  Pl. Response at 3.  Finally, with respect to the third prong, Plaintiff asserts the EDCD Waiver policy "is excessive government entanglement with religion," without any supporting facts.  Pl. Response at 4.  Plaintiff must provide the grounds of her entitlement to relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal citation omitted).  The Complaint, even if taken together with the additional facts in the Response, fails to state a plausible claim for a violation of the Establishment Clause.

Similarly, the additional facts in the Response do not establish a plausible claim against DMAS for violation of the Free Exercise Clause.  Plaintiff's Response challenges the neutrality of the EDCD Waiver policy and for the first time asserts a lack of a legitimate public interest.  Pl. Response at 3-4.  These assertions are contradicted by the Plaintiff's own statements that the EDCD Waiver policy was written with a secular purpose in mind, and the program was designed with the interest of benefitting the entire family.  Pl. Response at 3.  Plaintiff's allegations fall short of establishing a plausible Free Exercise claim that would allow the Court to draw the reasonable inference that Defendant is liable for the misconduct alleged.

## V. CONCLUSION

For the foregoing reasons, the Department of Medical Assistance Services respectfully requests that the Court grant its Motion to Dismiss the Complaint in its entirety, with prejudice.

Respectfully submitted,

**Department of Medical Assistance Services**

By: \_\_\_\_\_/s/ Jennifer L. Gobble
    Jennifer L. Gobble (VSB No. 65493)
    Assistant Attorney General
    OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA
    202 North 9th Street
    Richmond, Virginia 23219
    Telephone: (804) 786-4905
    Facsimile: (804) 371-8718
    Email: jgobble@oag.state.va.us

MARK R. HERRING
Attorney General

CYNTHIA V. BAILEY
Deputy Attorney General

KIM F. PINER
Senior Assistant Attorney General

JENNIFER L. GOBBLE*
Assistant Attorney General

*Counsel of Record*

Pageid#: 109

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of September, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I mailed a copy by U.S. mail to the *pro se* Plaintiff at the address below:

Ms. Melinda L. Scott
P.O. Box 1133-2014PMB87
Richmond, VA 23218

       /s/ Jennifer L. Gobble
Jennifer L. Gobble (VSB No. 65493)
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-4905
Facsimile: (804) 371-8718
Email: jgobble@oag.state.va.us
*Counsel for Defendant*